***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Glenn, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
2. Defendant was a duly qualified self insured at all relevant times herein.
3. An employee-employer relationship existed between plaintiff and defendant at all relevant times. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from November 6, 1972, until the date of the hearing before the Deputy Commissioner and continuing.
4. Plaintiff was last injuriously exposed to asbestos during plaintiffs employment with defendant and specifically, plaintiff was exposed to asbestos for thirty (30) days within a seven month period while employed by defendant, as set out in N.C. Gen. Stat. § 97-57.
5. Subsequent to the hearing, defendant has stipulated that plaintiff does suffer from an occupational disease, asbestosis, and further that he was diagnosed with asbestosis on May 29, 1998, by Dr. Darcey. Defendant further agrees that a member of the North Carolina Occupational Disease Panel confirmed this diagnosis and that these medical records are stipulated into evidence for consideration by the Industrial Commission.
6. It is stipulated that defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s-and the vast majority of the insulation used in the original construction of the buildings contains asbestos. Steam-producing boilers are used at the facility along with hundreds of miles of steam pipes covered with friable asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
7. Plaintiff started working for defendant in 1972 in the recycling division. After six months, he was transferred to the boiler room, where he was involved in tearing asbestos insulation off the boilers after they were burned or required changing. Plaintiff also had to rip out asbestos insulation during construction and repair projects on pipes, motors, and pumps. While working in the boiler room area, plaintiffs clothing would be covered with so much asbestos that it appeared as if he had been in a "snow storm." He was involved in this activity for the majority of his career until about ten years ago. Plaintiff stated that the areas he worked in were extremely dusty and he had very close exposure to asbestos when it was being torn down. He worked around the paper machines later in his career and was exposed to the asbestos dust generated by the brake linings on the paper machines. Plaintiff also was involved in mixing and applying asbestos mud insulation materials, which had a very high content of asbestos. The defendant did not supply the plaintiff with any type of protective mask or respirator to protect him from asbestos exposure.
8. Plaintiff's income during the fifty-two (52) weeks prior to his diagnosis on May 29, 1998, was $45,926.15, which is sufficient to produce the maximum compensation rate for 1998, $532.00. By separate stipulation by counsel for both parties on August 13, 2002, it is stipulated that plaintiffs wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000; which was $588.00.
9. Plaintiff contends that he is entitled to an award of ten percent (10%) penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12. and defendant stipulated that should the claim be found compensable, defendant would agree by compromise to pay 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
10. The parties agreed further that should plaintiff be awarded compensation, the Industrial Commission may include language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-62-5(b).
11. The parties further agreed that should the Industrial Commission determine N.C. Gen. Stat. §§ 97-60 through 97-61.7 to be unconstitutional, additional testimony could be offered by the parties on the issues of loss of wage earning capacity and/or disability.
12. The parties agreed that the only contested issues for determination are:
 A. Does N.C. Gen. Stat. §§ 97-60 through 97-61.7 apply to plaintiffs claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina?
 B. What benefits, monetary and/or medical, is Plaintiff entitled to receive, if any?
13. The parties submitted for consideration by the Industrial Commission the medical records and reports of plaintiff by the following physicians:
a. Dr. Dennis Darcey
b. Dr. Phillip Lucas
c. Dr. Albert Curseen
d. Dr. Fred Dula
e. Dr. Richard Bernstein
f. Dr. L.C. Rao
g. Dr. James Merchant
h. Dr. Saadat Khan
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant, Weyerhaeuser Company, at its facility in Plymouth, North Carolina, from November 6, 1972, until the hearing before the Deputy Commissioner and continuing.
2. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s and the vast majority of the insulation used in the original construction of the buildings contained asbestos. Steam-producing boilers are used at the facility along with hundreds of miles of steam pipes covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
3. Plaintiff starting working for defendant in 1972 in the recycling division. After six months, he was transferred to the boiler room where he was involved in tearing asbestos insulation off the boilers after they were burned or required changing. He also had to rip out asbestos insulation during construction and repair projects on pipes, motors, and pumps. While plaintiff was working in the boiler room area, his clothing would be covered with so much asbestos dust that it appeared as if he had been in a "snow storm." He was involved in this activity for the majority of his career until about ten years ago. Plaintiff states that the areas he worked in were extremely dusty and he had very close exposure to asbestos when it was being torn down. Plaintiff worked around the paper machines later in his career and was exposed to the asbestos dust generated by the brake linings on the paper machines. He also was involved in mixing and applying asbestos mud insulation materials, which had a very high content of asbestos. Defendant did not supply plaintiff with any type of protective mask or respirator to protect him from asbestos exposure. Plaintiff inhaled asbestos dust while working for defendant.
4. Plaintiff was exposed to asbestos-containing materials on a regular basis for more than thirty working days or parts thereof within seven consecutive months from 1972 to the date of the hearing before the Deputy Commissioner.
5. The following medical records confirming the diagnosis of asbestosis were submitted to the Full Commission by counsel for the parties:
 a. The medical report of Dr. Dennis Darcey of the Division of Occupational Environmental Medicine of Duke University, dated May 29, 1998. Dr. Darcey took an occupational history from plaintiff. Plaintiff was exposed to asbestos over the course of 26 years while working with defendant. He was not given respiratory protection when exposed to asbestos dust.
 b. It was the opinion of Dr. Darcey, and the Full Commission finds as fact, that plaintiff has a history of exposure to asbestos dust while working at the Weyerhaeuser Paper plant beginning in 1972. In addition, there has been enough latency to develop changes of asbestosis, which were seen on the ILO chest x-ray and high resolution CT of the chest. The high profusion seen is likely due to a combination of the asbestos exposure and cigarette smoking. Dr. Darcey classified plaintiff with having a Class 2 Respiratory Impairment based on the AMA Guidelines.
 c. Dr. Darcey, as part of his report, recommended that plaintiff undergo periodic monitoring for progression of asbestos-related disease including pulmonary function and chest x-ray, because further deterioration in pulmonary function can occur even after exposure has ceased. He further recommended that plaintiff should avoid further exposure to asbestos dust. Finally, in addition to plaintiffs increased risk of developing asbestosis, he was and remains at an increased risk of developing lung cancer and mesothelioma as a result of his asbestos exposure, compared to non-exposed individuals.
 d. A CT scan and chest x-ray report dated November 8, 1997, interpreted by Dr. Fred Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. Dr. Dula reports areas in which the pleura is diffusely thickened bilaterally and interstitial findings including short thickened interlobar lines extending to the pleural surfaces on the CT scan. In addition, he notes that the lungs have a somewhat ground-glass appearance. On the chest x-ray, Dr. Dula reports interstitial changes in the lower two thirds of both lungs consisting of irregular linear opacities and bilateral pleural thickening on the left more than right. Overall, it was his opinion there are interstitial and pleural changes that would be consistent with asbestosis in the appropriate clinical situation.
 e. A CT scan and chest x-ray report dated December 22, 1999, interpreted by Dr. Fred Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. He reports focal interstitial changes seen in both lung bases in a few locations, including short, thickened interlobular septal lines extending to the pleural surfaces on the CT scan. There is curvilinear subpleural line formation in the left base. In addition, there is a mild, diffuse ground-glass appearance to the lung parenchyma and a plaque on the left hemidiaphragm. On the chest x-ray. there is pleural thickening on both chest walls and interstitial changes in the middle and lower lung zones on both sides consisting of irregular linear opacities. It is his overall impression that the findings are consistent with asbestosis.
 f. Dr. L.C. Rao, a NIOSH B-reader at Pulmonary Medicine Associates, reviewed chest x-rays dated November 8, 1997 and August 8, 1999. On the 1997 chest x-ray, he reports irregular opacities present in the lower, middle and upper lung zones bilaterally of category s/t with 1/1 profusion. On the 1999 chest x-ray, he reports irregular opacities present in the lower and middle lung zones bilaterally of category t/t with 1/0 profusion. He also notes circumscribed chest wall pleural thickening on the left and diffuse chest wall pleural thickening on the right. It was Dr. Raos overall conclusion that with a significant exposure history to asbestos dust, these findings are consistent with the diagnoses of bilateral interstitial fibrosis due to asbestosis and asbestos-related pleural fibrosis bilaterally.
 g. Dr. Richard C. Bernstein, a B-reader at Pulmonary Critical Care Medicine, reviewed the chest x-ray, dated November 8, 1997. He reported parenchymal abnormalities consistent with pneumoconiosis in the middle and lower lung zones with a profusion of 1/0.
 h. James A. Merchant, M.D., Ph.D., B-reader and Dean of the University of Iowa, reviewed the chest x-ray dated August 9, 1999. He reported pleural and parenchymal abnormalities consistent with pneumoconiosis in the lower and middle lung zones with a profusion of 1/1.
 i. Dr. Phillip Lucas, a NIOSH B-reader and radiologist, reviewed the chest x-ray dated November 8, 1997. He reported irregular interstitial opacities in middle and lower lung zones, the size and shape of which are classified as t/t and the profusion is 1/0. Overall, it his opinion that there are bilateral interstitial fibrotic changes consistent with asbestosis in a patient who has had an adequate exposure history and latency period.
 j. Medical reports from Dr. Curseen, a pulmonologist at Lake Norman Center for Breathing Disorders saw plaintiff on May 18, 1998, for pulmonary functions tests and on September 17, 1999, for a full evaluation. On the basis of the pulmonary function tests on May 18, 1998, Dr. Curseen classified plaintiff as a Class 2 Level of AMA Respiratory Impairment. On September 17, 1999, Dr. Curseen took a full occupational work history from plaintiff who stated he has worked for defendant-employer for 27 years as a maintenance worker and senior mechanic. Plaintiff reported that he worked on asbestos insulation wrapped around pipe, boilers, valves, and ducts. He also had to beat off insulation with a hammer, again exposing him to large amounts of dust from insulation. The asbestos dust often grew so thick that he could not see the pipes on which he was working. Plaintiff also reported that he used compressed air to blow dust from insulation off of pipes and valves so that he could access his work area. He would cut off asbestos with a knife or cutter and worked on asbestos-lined brakes and clutches, which exposed him to large amounts of asbestos dust.
 k. Dr. Curseen also performed a full physical evaluation and pulmonary function tests. He reported scattered wheezes and bibasilar rales in the chest and classified plaintiff with a Class 2 Level of AMA Respiratory Impairment. His overall assessment is that the preponderance of the medical evidence substantiates the diagnosis of asbestosis. Dr. Curseen stated in his report that he discussed with patient the increased risk for pulmonary malignancies due to his asbestos exposure and the need to get an annual radiograph to screen against such malignancies as well as follow the course of his asbestosis.
 l. An Advisory Medical Evaluation Report written by Dr. Saadat A. Khan, a panel physician who examined plaintiff at the request of the North Carolina Industrial Commission on April 29. 1999. He took an occupational history of the plaintiff, conducted a full physical evaluation, performed a pulmonary function test, blood test, and reviewed chest x-rays and other medical records including chest x-ray and CT scan reports. He reports that the plaintiffs chest x-ray and CT scan of the chest do show some changes which could be consistent with asbestosis. He also has a very strong history of exposure to asbestos while working at the Weyerhaeuser Paper Plant. In conclusion, Dr. Khan reported that plaintiff has a positive history of asbestos exposure and likely has asbestosis. He recommended that plaintiff be periodically monitored with repeat chest x-rays and pulmonary functions, as plaintiffs risk of lung cancer and mesothelioma is certainly increased.
6. Plaintiff does suffer from asbestosis and asbestos-related pleural disease as a result of his many years of asbestos exposure while employed by the defendant. His pulmonary impairment is permanent and likely to progress. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future as a result of his asbestosis and asbestos-related pleural disease. Further, medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos-related cancers.
7. Plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00. Deputy Commissioner Glenn ordered plaintiff removed from further exposure to asbestosis by his Opinion and Award filed August 21, 2000.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company, 101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344.553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. The legislative intent of Sections 97-61.1 through 97-61.7 of the North Carolina General Statutes is to promote workplace safety by encouraging employees to remove themselves from further injurious exposures. Removal from further exposure to the hazards of asbestos can be accomplished by removal from the hazard as opposed to removal from the employment. Austin v. General Tire, 141 N.C. App. 397, 540 S.E.2d 824
(2000), rev'd on other grounds, 354 N.C. 344, 553 S.E.2d 680 (2001);Roberts v. Southeastern Magesia and Asbestos Co., 61 N.C. App. 706,301 S.E.2d 742 (1983); N.C.G.S. § 97-53(28)(i);29 C.F.R. § 1910.134.
6. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiffs 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The parties have stipulated that plaintiffs wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2000, when plaintiff was first ordered removed. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of the order of removal at the weekly benefit rate of $588.00. N.C. Gen. Stat. § 97-61.5; Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983).
7. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60et seq., has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. HT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are constitutional.
8. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos-related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure, or lessen plaintiffs period of disability. N.C. Gen. Stat. §§ 97-25, and 97-59.
9. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§97-61.1, et seq., and is further entitled to any additional benefits due to plaintiff, which shall be determined after additional examinations and hearings.
10. Defendant stipulated that, should the Industrial Commission determine that plaintiff contracted the occupational disease asbestosis during the course and scope of his employment with defendant, defendant would waive further proof needed under N.C. Gen. Stat. § 97-12 (that the injury is caused by the willful failure of the employer to comply with any statutory requirement) and, in compromise of this issue, would accept a 5% penalty against all compensation due other than medical compensation. The Industrial Commission has so determined and defendant's offer of a compromise 5% penalty is deemed appropriate.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered removed from any occupation that further exposes him to the hazards of asbestos. N.C. Gen. Stat. § 97-61.5(b).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos-related pleural disease while employed by defendant and as a consequence of the Industrial Commission's Order of Removal, at a weekly rate of $588.00, commencing on August 21, 2000. Said sum shall be paid in a lump sum to plaintiff without commutation, subject to the attorney's fee approved herein.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph I above to plaintiff, which shall also be paid in a lump sum. As per agreement of the parties, defendant shall also pay a 10% late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, March 22, 2000, until paid in full. The interest shall be paid in full to the claimant and is not subject to attorneys' fees. N.C. Gen. Stat. § 97-86.2.
4. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Plaintiff shall undergo additional examinations as provided by law.
6. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs I and 2 above is approved for plaintiff's counsel. Defendant shall deduct 25% of the lump sum otherwise due plaintiff shall pay such 25% directly to plaintiffs counsel.
7. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
8. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing, if necessary, following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiffs eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This the 10th day of October, 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/__________________ BERNADINE S. BALANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER